**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSE ENRIQUE BLANCO CABRERA, | ) | CASE NO. 4:26-CV-00085-DAR |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| KEVIN RAYCRAFT, *et al.* | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| | ) | |
| Respondents. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

## I.     INTRODUCTION

Petitioner, Jose Enrique Blanco Cabrera ("Mr. Blanco Cabrera") filed a petition for a writ

of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). In the petition, Mr. Blanco Cabrera, a

citizen of El Salvador who entered the United States without inspection, alleges that his due

process rights are being violated because he is being detained at the Northeast Ohio Correctional

Center and has not been granted a bond hearing.

This matter was referred to me on January 16, 2026 under Local Rule 16.2 to prepare a

report and recommendation on Mr. Blanco Cabrera's petition. (*See* ECF non-document entry dated

January 16, 2026). On the same day, Mr. Blanco Cabrera filed an amended petition, naming as

respondents Field Office Acting Director Kevin Raycraft, Secretary of the Department of

Homeland Security Kristi Noem, Attorney General Pamela Bondi, the United States Department

of Homeland Security, the Executive Office for Immigration Review, Warden Kenneth Hoover,

and United States Attorney David M. Toepfer ("Respondents"). On February 20, 2026,

Respondents filed a response to Mr. Blanco Cabrera's petition and motion to dismiss the petition.

1

(ECF No. 18). Mr. Blanco Cabrera filed his reply on March 6, 2026. (ECF No. 19.) For the reasons set forth below, I recommend that the Court GRANT Mr. Blanco Cabrera's petition for a writ of habeas corpus and DENY Respondents' motion to dismiss.

## II.  FACTUAL AND PROCEDURAL BACKGROND

"For decades, noncitizens already present in the United States at the time of their arrest . . . have been considered subject to discretionary detention." *Cuyun v. Raycraft*, No. 3:25-CV-02785-JJH, 2026 WL 362791, at *7 (N.D. Ohio Feb. 10, 2026) (report and recommendation) (citing Inspection and Expedited Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)).

In July 2025, however, the Department of Homeland Security ("DHS") issued an internal memorandum, entitled "Interim Guidance Regarding Detention Authority for Applications for Admission." *See Kaur v. Raycraft*, No. 4:25-CV-02679, 2026 WL 709728, at *2 and n.4 (N.D. Ohio Mar. 13, 2026) (discussing memorandum). Under that memorandum, all individuals who entered the United States without inspection were deemed "applicants for admission" under 8 U.S.C. § 1225(a) and subject to mandatory detention under 8 U.S.C. § 1225(g)(2)(A), regardless of whether an individual was detained upon entry or had been present in the United States for years. *Id*.[1]

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued its decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2005), holding that immigration judges "do[] not have authority over [a] bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id*. at 220.

---

[1] The policy memorandum does not appear to be publicly available on any government site. *See Cuyun*, 2026 WL 362791, at *7 n.2. It does not appear that Respondents have ever denied the existence of the memorandum.

2

Several individuals brought suit in the United States District Court for the Central District of California challenging the policy change. On December 18, 2025, that court issued an order: granting partial summary judgment to petitioners and holding that *Matter of Yajure Hurtado* was no longer controlling; vacating DHS's policy change; and certifying a Bond Eligible Class consisting of "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista v. Santacruz*, --- F. Supp. 3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). Mr. Blanco Cabrera has attached to his petition purported guidance from the chief immigration judge stating that *Maldonado Bautista* "is not a nationwide injunction and does not purport to stay, vacate, or enjoin *Yajure Hurtado*," and instructing immigration judges to follow *Matter of Yajure Hurtado* as binding precedent. (ECF No. 7-11).

Mr. Blanco Cabrera alleges that he is a member of the *Maldonado Bautista* class. He is a native and citizen of El Salvador. (ECF No. 7-1). Mr. Blanco Cabrera entered the United States without inspection on or about November 15, 2020. (ECF No. 7-2). At the time, he was 17 years old. (ECF No. 7-1). Shortly after entering the country, Mr. Blanco Cabrera encountered United States border patrol agents and was taken into custody. (ECF No. 18-1). He was designated as an "unaccompanied alien child" ("UAC") and transferred to the custody of the Secretary of Health and Human Services' Office of Refugee Resettlement ("ORR"). (ECF No. 7-3). Mr. Blanco Cabrera was released to the custody of his uncle on or about December 27, 2020. *Id.*[2]

On November 17, 2020, Mr. Blanco Cabrera was served with a notice to appear before an immigration judge for removal proceedings. (ECF No. 7-2). The notice to appear stated that Mr.

---

[2] Mr. Blanco Cabrera asserts that these actions were taken pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"). Respondents do not dispute that assertion.

3

Blanco Cabrera was an "alien present in the United States who has not been admitted or paroled," rather than an "arriving alien." *Id*. Mr. Blanco Cabrera failed to appear at the hearing and, on April 21, 2021, the immigration judge found that he was subject to removal. (ECF No. 18-3).

On June 13, 2022, Mr. Blanco Cabrera applied for asylum. (ECF No. 7-4). On or around November 12, 2025, Immigration and Customs Enforcement took Mr. Blanco Cabrera into custody. Mr. Blanco Cabrera claims that he was unaware of the prior removal order and that he inadvertently missed the April 2021 hearing. (ECF No. 7, ¶ 12). Mr. Blanco Cabrera moved to reopen the proceedings, and the immigration judge granted the motion on November 19, 2025. (ECF No. 7-5).

Mr. Blanco Cabrera filed a motion for a custody redetermination hearing, requesting that the immigration court schedule an initial bond redetermination hearing because Mr. Blanco Cabrera is, he claims, a member of the bond eligible class from *Maldonado Bautista*. (ECF No. 18-5). On January 22, 2026, the immigration judge denied Mr. Blanco Cabrera's motion, holding that it lacked jurisdiction, presumably in light of the *Matter of Yajure Hurtado* decision. (ECF No. 18-6). Mr. Blanco Cabrera remains in in ICE custody at the Northeast Ohio Correctional Center.

On January 14, 2026, Mr. Blanco Cabrera filed his 28 U.S.C. § 2241 habeas petition. (ECF No. 1). On January 16, 2026, the Court referred the matter to me to prepare a report and recommendation on Mr. Blanco Cabrera's petition. (ECF No. 5). On the same day, Mr. Blanco Cabrera filed an amended petition. (ECF No. 7). On February 20, 2026, Respondents filed a response to Mr. Blanco Cabrera's petition and motion to dismiss the petition. (ECF No. 18). On March 6, 2026, Mr. Blanco Cabrera filed a traverse and response to Respondents' motion to dismiss. (ECF No. 19).

## III.    ANALYSIS

Mr. Blanco Cabrera seeks a writ of habeas corpus requiring Respondents to either release

him on bond or grant him a bond hearing. In response, Respondents argue that the Court lacks jurisdiction over Mr. Blanco Cabrera's petition, that he has failed to exhaust his claims, and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and thus not entitled to a bond hearing.

Mr. Blanco Cabrera's petition is far from the first to raise these issues. Rather, in the months since DHS' policy change and the *Matter of Yajure Hurtado* decision, courts throughout the country have seen an "overwhelming surge" of habeas petitions raising similar arguments. *Millan v. Voorhies*, No. 4:25-cv-02779, 2026 WL 248376, at *9 (N.D. Ohio Jan. 30, 2026) (report and recommendation) (noting that in the four months since the *Matter of Yajure Hurtado* decision, there had been more than 1,000 district court decisions, including more than 200 from district courts in the Sixth Circuit, addressing similar issues).

Courts have reached differing answers on many of those questions, both nationwide and within this district. However, a "clear majority" of courts have rejected Respondents' arguments and have granted habeas relief to petitioners like Mr. Blanco Cabrera. *Lopez v. Noem*, No. 3:26 CV 128, 2026 WL 395202, at *10 (N.D. Ohio Feb. 12, 2026). After careful consideration, I agree with that clear majority. Accordingly, I recommend that the Court grant Mr. Blanco Cabrera a writ of habeas corpus and require Respondents to provide him with a bond hearing.

### A.  <u>Proper Respondent</u>

Before turning the substance of the parties' arguments, I must address the identity of the proper respondent. While Mr. Blanco Cabrera has named a number of individuals and agencies as respondents, Respondents state in a footnote to their answer that the only proper respondent is Field Office Director Kevin Raycraft. I agree.

A district court must direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243. In the immigration context, the Sixth Circuit has held that,

5

although the warden of the facility where the alien is detained "technically has day-to-day control," the "INS District Director for the facility where the petitioner is located has power over alien habeas petitioners." *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003) (quotations omitted). Accordingly. "a detained alien generally must designate his immediate custodian—the District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Id*.

Relying on *Roman*, several courts in this district have held that the District Director is the proper respondent and that other respondents, such as Secretary Noem and Attorney General Bondi, should be dismissed. *See Martinez Hernandez v. Raycraft*, No. 3:25-CV-02591-DAR, 2026 WL 698639, at *3 (N.D. Ohio Mar. 12, 2026) (report and recommendation) (recommending dismissal of respondents other than ICE District Director); *Hu v. Raycraft*, No. 4:26-cv-113, 2026 WL 539117, at *1 n.1 (N.D. Ohio Feb. 26, 2026) (report and recommendation) (same). Mr. Blanco Cabrera has not argued to the contrary. I therefore recommend that the Court dismiss all respondents other than Field Director Rayfield because they are not proper respondents.

### B.  Subject Matter Jurisdiction

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The writ of habeas corpus is "available to every individual detained in the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Accordingly, the protections of the writ extend to noncitizens in immigration matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). However, Congress has limited federal court jurisdiction over habeas petitions in the immigration context in several ways. Respondents argue that two of those statutory provisions, 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9), deprive the Court of jurisdiction over Mr. Blanco Cabrera's petition. I will address each in turn.

    1.  <u>8 U.S.C. § 1252(g)</u>

8 U.S.C. § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Supreme Court has rejected the notion that the provision is a "zipper clause" that "covers the universe of deportation claims . . . ." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Rather, the *Reno* Court held that § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id*. (quoting 8 U.S.C. § 1252(g)). The Court further noted that there are "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order." *Id*. However, it was "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id*.

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), a plurality of the Court reaffirmed that interpretation, noting that *American-Arab Anti-Discrimination Commission* "read the language [of § 1252(g)] to refer to just those three specific actions themselves." 583 U.S. 281, 294 (2018); *see also Dep't of Homeland Security v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (noting that § 1252(g) is "narrow"). The Sixth Circuit has likewise held that, under § 1252(g), a "district court's jurisdiction over . . . detention-based claims is independent of its jurisdiction over removal-based claims." *Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018); *see also Elgharib v. Napolitano*, 600 F.3d 597, 600 (6th Cir. 2010) (noting that Sixth Circuit precedent supports

jurisdiction where a "petition raise[s] a challenge that d[oes] not require the district court to address the merits of [the petitioner's] order of removal").

Respondents argue that § 1252(g) deprives the Court of jurisdiction because the decision to "commence" removal proceedings includes the decision to detain an alien pending those proceedings. As one court in this district has held, however, "[w]hile an immigrant's detention is technically related to the attorney general's decision to commence proceedings, that technical relation is insufficient to trigger § 1252(g)." *Lemus v. Lynch*, No. 4:26-cv-203, 2026 WL 496731, at *3 (N.D. Ohio Feb. 23, 2026); *see also Garcia Rodriguez v. Raycraft*, No. 4:26-cv-0302, 2026 WL 656956, at *4 (N.D. Ohio Mar. 9, 2026) (rejecting argument that § 1252(g) applies to decision to detain alien pending removal because "the Supreme Court has declined to read section 1252(g) as a broad prohibition on any possible claim causally arising from those three actions"); *Gu v. Noem*, 3:26-cv-00036, 2026 WL 621356, at *3 (N.D. Ohio Mar. 5, 2026) ("To hold otherwise would contradict Supreme Court precedent holding § 1252(g) does not—as Respondents urge— 'sweep in any claim that can technically be said to arise from the three listed actions'") (quoting *Jennings*, 583 U.S. at 294) (cleaned up).

Thus, "[m]ost courts in the Sixth Circuit to have addressed the issue agree that challenges to the government's failure to provide a detained immigrant with a bond hearing do not fall within the narrow scope of § 1252(g)." *Lemus*, 2026 WL 496731, at *5 (citing cases); *see also Lopez*, 2026 WL 395202, at *3 ("lower courts have overwhelmingly agreed that Section 1252(g) does not divest courts of subject matter jurisdiction over habeas challenges to the legality of a noncitizen's detention."); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 3122837, at *5 (N.D. Ohio Nov. 7, 2025) ("section 1252(g) . . . does not bar the Court's jurisdiction to consider Petitioners' claims concerning their continued detention without a bond hearing").

To support their contrary interpretation, Respondents cite several out-of-circuit decisions,

most of which predate DHS's policy change. Most of those decisions are distinguishable. In *Alvarez v. United States Immigration & Customs Enforcement*, for example, the petitioner challenged the underlying decision to detain him, not the failure to provide him a bond hearing. 818 F.3d 1194, 1203 (11th Cir. 2016). The same is true of several district court decisions that Respondents rely on. *See Valencia-Mejia v. United States*, No. CV 08–2943 CAS (PJWx), 2008 WL 4286979, at *3-4 (C.D. Cal. Sept. 15, 2008); *Wang v. United States*, No. CV 10-0389 SVW (RCx), 2010 WL 11463156, at *5 (C.D. Cal. Aug. 18, 2010) *Herrera-Correra v. United States*, No. CV 08-2941 DSF (JCx), 2008 WL 11336833, at *3 (C.D. Cal. Sept. 11, 2008). The petitioner in *Tazu v. Attorney General* likewise challenged the timing of his removal in addition to his detention. 975 F.3d 292, 296-99 (3d Cir. 2020).

To the extent the authority Respondents rely on is not distinguishable, it is unpersuasive in light of *Reno*, *Jennings*, and the weight of authority in this District and Circuit. I therefore recommend that the Court hold that § 1252(g) does not divest it of jurisdiction to consider Mr. Blanco Cabrera's petition.

### 2.  8 U.S.C. § 1252(B)(9)

Respondents also argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9), which provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Unlike § 1252(g), § 1252(b)(9) is an "unmistakable 'zipper' clause." *Reno*, 525 U.S. at 483. "Its purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals . . . ." *INS v. St. Cyr*, 533 U.S. 289, 313 (2001).

That does not mean, however, that § 1252(b)(9) is all-encompassing. Rather, *Jennings* made clear that § 1252(b)(9) has meaningful limits. There, petitioners argued that they were entitled to periodic bond hearings while detailed awaiting removal. 583 U.S. at 292. The *Jennings* plurality "assume[d] for the sake of argument" that the actions taken to detain aliens without a bond hearing pending removal constituted "action[s] taken . . . to remove [them] from the United States." *Id*. at 292-93. The plurality also acknowledged that, if removal proceedings had not been initiated, "the aliens would not be in custody at all." *Id*. at 293.

The plurality nonetheless rejected the assertion that such an action "arises from" a removal proceeding for purposes of § 1252(b)(9), stating that such an expansive interpretation "would lead to staggering results" and would "make claims of prolonged detention effectively unreviewable." *Id*. at 293. Thus, while the plurality did not need to provide a "comprehensive interpretation" of § 1252(b)(9), it held that § 1252(b)(9) "does not present a jurisdictional bar" where the alien is "not asking for a review of an order of removal . . . not challenging the decision to detain them in the first place or to seek removal . . . and . . . not even challenging any part of the process by which their removability will be determined." *Id*. at 294-95.

In light of *Jennings*, most courts in this district have held that § 1252(b)(9) does not deprive a district court of jurisdiction to consider a petition alleging that the government must grant aliens like Mr. Blanco Cabrera a bond hearing. *See Lemus*, 2026 WL 496731, at *3 (holding that § 1252(b)(9) "presents no bar" where a petitioner "only challenges the government's failure to provide a bond hearing" rather than a removal order, the initial decision to detain him or seek removal, or the process by which removability will be determined); *Gu*, 2026 WL 621356, at *4 (holding that *Jennings* "resolves [the] argument" against Respondents' position because petitioner was "not challenging the removal proceeding" but rather "his detention and due process rights"); *E.V.*, 2025 WL 3122837, at *7 ("The question of whether statutory provisions require detention

10

without bond hearings do[es] not 'arise from' actions taken to remove noncitizens."); *Garcia Rodriguez*, 2026 WL 656956, at *4 ("claims of unconstitutional detention do not constitute a question of law or fact 'arising from' an action taken or proceeding brought to remove an alien"); *Lopez*, 2026 WL 395202, at *3 (holding that Respondents' "expansive" interpretation was "unsupported by [§ 1252(b)(9)'s] plain language and contradicts Supreme Court precedent on this issue").

In urging a contrary conclusion, Respondents rely on Justice Thomas' concurring opinion in *Jennings*, in which he concluded that "detention *is* an 'action taken . . . to remove' an alien." *Id*. at 318 (Thomas, J., concurring). But the *Jennings* plurality rejected that interpretation. As the plurality held, even assuming that detention is an action taken "to remove an alien . . . [t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in the case arise from such an action." *Jennings*, 583 U.S. at 295 n.3. There, the questions presented were "too remote from the actions taken to fall within the scope of § 1252(b)(9)." *Id*.; *see also Cuyun*, 2026 WL 362791, at *5 (stating that the *Jennings* plurality "expressly rejected" the concurrence's interpretation); *Kuar v. Raycraft*, No. 4:25-CV-02679, 2026 WL 709728, at *6 (N.D. Ohio Mar. 13, 2026). Here, Mr. Blanco Cabrera challenges only the failure to grant him a bond hearing, a legal question that is "too remote" to fall within the scope of § 1252(b)(9). *Jennings*, 583 U.S. at 295 n.3.

Respondents also cite *Khalil v. President, United States*, 164 F.4th 259 (3d Cir. 2026), for the proposition that § 1252(b)(9) deprives the Court of jurisdiction over Mr. Blanco Cabrera's petition. As another court in this district has noted, however, "the reason that Section 1252(b)(9) applied was because Khalil's specific detention challenge was intertwined with his argument challenging his removal order." *Gualpa-Lumbi v. Hoover*, No. 4:26-cv-0038, 2026 WL 452351, at *5 (N.D. Ohio Feb. 18, 2026) (report and recommendation); *see also Lemus*, 2026 WL 496731,

at *4 (distinguishing *Khalil* because petitioner in that case "challenged 'both his removal and his detention pending removal proceedings'") (quoting *Khalil*, 164 F.4th at 273). Mr. Blanco Cabrera's argument that he is entitled to a bond hearing is unrelated to the validity of any underlying removal order, and *Khalil* thus does not compel a different result.

Finally, Respondents cite to two decisions from the same judge in this district holding that § 1252(b)(9) deprives district courts of jurisdiction to hear claims that aliens are entitled to bond hearings, *Amaya-Velis v. Raycraft*, --- F. Supp. 3d ---, 2026 WL 100596 (N.D. Ohio Jan. 14, 2026), and *Munoz Nataren v. Raycraft*, No. 4:26cv212, 2026 WL 214368 (N.D. Ohio Jan. 28, 2026). In light of *Jennings*, however, I respectfully conclude that those decisions are less persuasive than decisions holding that the question of whether an alien is entitled to a bond hearing does not "arise from" the removal proceeding and does not fall within the scope of § 1252(b)(9). Other courts in this district have declined to follow *Amaya-Velis* and *Munoz Nataren* on the same grounds. *See Lemus*, 2026 WL 496731, at *4 (disagreeing with *Amaya-Velis* and *Munoz Nataren* and concluding those decisions "conflate a challenge to detention itself with a challenge to the lack of a bond hearing"); *Kuar*, 2026 WL 709728, at *7 (disagreeing with *Amaya-Velis*). I recommend that the Court reject Respondents' argument that § 1252(b)(9) deprives it of jurisdiction over Mr. Blanco Cabrera's petition.

## C. Exhaustion

Respondents next argue that the Court should dismiss Mr. Blanco Cabrera's petition because he failed to exhaust his administrative remedies. In particular, Respondents note that, after the immigration court denied Mr. Blanco Cabrera's request for custody redetermination, he failed to appeal that decision to the BIA.

If Congress mandates exhaustion, a court must require a petitioner to exhaust administrative remedies before bringing suit. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).

12

"The exhaustion doctrine both allows agencies to 'apply [their] special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)).

Respondents do not contend that any statute applies here that mandates exhaustion. "When 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *Shearson*, 725 F.3d at 593 (6th Cir. 2013) (quoting *McCarthy*, 503 U.S. at 144). "This discretion is referred to as 'prudential' exhaustion . . . and such a court-made exhaustion rule must comply with statutory schemes and congressional intent." *Lopez*, 2026 WL 395202, at *5 (quoting *Island Creek Coal Co. v. Bryan*, 917 F.3d 738, 746 (6th Cir. 2019)).

Moreover, "[w]hile a court has discretion to fashion exhaustion requirements, there are some exceptions to the exhaustion doctrine." *Shearson*, 725 F.3d at 594. "For example, exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" *Id.* (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)). "Additionally, '[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.'" *Id.* (quoting *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)). Finally, a court may waive exhaustion where a "legal question is fit for resolution and delay means hardship . . . ." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

"[T]he Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Ramirez Moreno v. Lynch*, Case No. 4:26 CV 275, 2026 WL 496634, at *2 (N.D. Ohio Feb. 23, 2026). "In evaluating prudential exhaustion in habeas petitions seeking bond hearings, district

courts in this circuit generally consider three factors[.]" *Gu*, 2026 WL 621356, at *4; *see also Cuyun*, 2026 WL 362791, at *6 (noting that the three-factor test is drawn from Ninth Circuit caselaw) (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Those factors are whether: (1) the agency has expertise such that agency consideration is necessary to generate a proper record and reach a decision; (2) relaxation of the exhaustion requirement would encourage petitioners to deliberately bypass administrative review; and (3) administrative review is likely to enable the agency to correct mistakes and preclude judicial review. *Gu*, 2026 WL 496634, at *4.[3]

Weighing those factors, I conclude that a prudential exhaustion requirement is not warranted here. First, the question Mr. Blanco Cabrera presents is one of pure statutory interpretation, and no agency expertise or consideration is necessary to generate a proper record. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024) (interpreting the meaning of statutes is a judicial function). In addition, waiving exhaustion would not encourage petitioners to bypass administrative review, as "[t]he Sixth Circuit has repeatedly held [that] the BIA cannot review constitutional claims . . . ." *Gu*, 2026 WL 621356, at *6 (citing cases). Finally, administrative review is unlikely to enable the agency to correct mistakes, as the BIA already held in *Matter of Yajure Hurtado* that petitioners like Mr. Blanco Cabrera are not entitled to bond hearings.

Even if a prudential exhaustion requirement were appropriate, I would conclude that exhaustion should be waived in the circumstances presented here. In light of *Matter of Yajure Hurtado*, there is no reason to believe that the agency intends to reconsider its determination that Mr. Blanco Cabrera is not entitled to a bond hearing, and exhaustion would therefore be futile. *See Gu*, 2026 WL 621356, at *6-7; *Lemus*, 2026 WL 496731, at *7 ("there is no question that the

---

[3] In *Lemus*, Chief Judge Lioi held that the three-factor test was "not particularly well suited" to these types of cases, and instead waived exhaustion on futility and hardship grounds, though Chief Judge Lioi also held that exhaustion should be waived even if the three-factor test applied. 2026 WL 496731, at *7 n. 5. As discussed below, I alternatively find that any exhaustion requirement should be waived under Judge Lioi's formulation as well.

14

government's administrative agency has predetermined the disputed issue by having a clearly stated position that the petitioner is not eligible for the relief sought") (quotations omitted); *Lopez*, 2026 WL 395202, at *6 ("This Court cannot think of anything more clearly amounting to a 'futile gesture' than requiring Petitioner to spend time appealing the Immigration Court's decision to deny her a bond hearing to the very agency that passed down that unequivocal directive.").

"There also can be no doubt that the legal question is fit for resolution by th[e] Court now," as it turns on a matter of pure statutory interpretation. *Lemus*, 2026 WL 496731, at *8. Moreover, additional delays would impose a hardship on Mr. Blanco Cabrera, who remains detained without a bond hearing. As another court in this Circuit has noted, "[b]ond appeals before the BIA, on average, take six months to complete." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 779 (E.D. Mich. 2025).

In light of those considerations, "the majority of district courts in the Sixth Circuit [] have concluded that requiring exhaustion would not promote judicial efficiency or protect administrative authority because it would only delay the resolution of [petitioner's] legal questions." *Lemus*, 2026 WL 496731, at *7 (quotations omitted) (citing cases); *see also Lopez*, 2026 WL 395202, at *5 (joining "several other[s] in this circuit" in concluding that exhaustion was not required).

Respondents cite to a number of cases from this district dismissing similar petitions for failure to exhaust. However, "[a] close inspection reveals that all of the decisions in the string were issued by one of two jurists." *Lemus*, 2026 WL 496731, at *6 n.4. After careful consideration, I conclude that the decisions declining to impose an exhaustion requirement or excusing exhaustion are more persuasive. I thus recommend that the Court deny Respondents' motion to dismiss Mr. Blanco Cabrera's petition for failure to exhaust administrative remedies.

**D. 8 U.S.C. §§ 1225(b)(2)(A) and 1226(a)**

Turning now to the merits of the parties' arguments, this case comes down to the interplay between two different statutory provisions, 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a). § 1225(b)(2)(A) provides that, with exceptions not relevant here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." § 1226(a), by contrast, provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). § 1226(a) further provides that the Attorney General "may release" the alien on bond. 8 U.S.C. § 1226(a)(2).

As Respondents concede, under § 1226(a), detention is discretionary. As Mr. Blanco Cabrera concedes, under § 1225(b)(2)(A), detention is mandatory. The question of which provision governs here is thus dispositive of Mr. Blanco Cabrera's petition. Mr. Blanco Cabrera argues that § 1226(a) governs because he is not an alien "seeking admission" under § 1225(b)(2)(A) as he has been in the country for years and is not currently "seeking" to enter it. Respondents, by contrast, argue that *all* aliens who enter the United States and have not been admitted are aliens "seeking admission" under § 1225(b)(2)(A), and that § 1226(b) applies only to aliens who previously entered the country legally but, for example, overstay their visas or are later determined to have been improperly admitted.

As always, I start with the text of the relevant statutes, which must be read in context. *United States v. Green*, 167 F.4th 832, 851 (6th Cir. 2026). § 1225(b)(2)(A) provides that "applicant for admission" who is "seeking admission" shall be detained. 8 U.S.C. § 1225(b)(2)(A). § 1225(a)(1) defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of

16

arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . . ." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). As an alien present in the United States who has not been lawfully admitted, Mr. Blanco Cabrera is an "applicant for admission."

However, § 1225(b)(2)(A) does not say that all applicants for admission must be detained. It says that an applicant for admission who is "seeking admission" must be detained unless the application is clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A). The term "seeking admission," is not defined. "When Congress does not define a term, courts 'must give the words their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.'" *Green*, 167 F.4th at 851-52 (quoting *Grand Traverse Band of Ottawa & Chippewa Indians v. US Att'y W. Dist. of Mich.*, 369 F.3d 960, 967 (6th Cir. 2004)). Dictionaries "often shed light on the ordinary meaning of the term." *Id*. at 852.

Merriam-Webster defines the term "seeking" as "to ask for," "to try to acquire or gain," or "to make an attempt." Merriam-Webster, Seeking, *available at* https://www.merriam-webster.com/dictionary/seeking (last accessed Mar. 31, 2026). As a number of courts in this district have held, the use of the active verb "seeking" implies present action beyond mere presence in the country. *See Gualpa-Lumbi*, 2026 WL 452351, at *8 ("Because the word *seeking* is the present participle of the verb *seek*, its use 'implies some sort of present-tense action'") (quoting *Curillo v. Noem*, No. 1:25-cv-1340, 2025 WL 3235737, at *5 (W.D. Mich. Nov. 20, 2025)); *Lemus*, 2026 WL 496731, at *11 ("the government's interpretation fails to give effect to Congress's choice to use the active term 'seeking' in describing those immigrants covered by § 1225(b)(2)"); *Lopez*, 2026 WL 395202, at *8 ("'Seeking' requires something more than just

17

passively being present in the United States"); *Gu*, 2026 WL 621356, at *8 ("Taken together, the plain meaning of an 'alien seeking admission' is an individual presently asking for, or trying to presently gain, entry into the United States. That is, an 'alien seeking admission' implies the alien is not already in the United States and is actively seeking to be admitted into the country's borders.").

Respondents do not meaningfully grapple with the statute's use of the term "seeking admission" beyond citing to one case from this circuit holding that an "applicant for admission" is also "seeking admission." (ECF No. 18, PageID # 243) (citing *Gonzalez v. Ladwig*, No. 2:26-CV-02017-MSN-ATC, 2026 WL 413602, at *5 (W.D. Tenn. Feb. 13, 2026). But "[i]t is a basic canon of statutory interpretation that '[e]very word in the statute is presumed to have meaning' and that courts should 'give effect to all the words to avoid an interpretation which would render words superfluous or redundant.'" *In re Village Apothecary, Inc.*, 45 F.4th 940, 948 (6th Cir. 2022) (quoting *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Congress could have drafted § 1225(b)(2)(A) to say that an applicant for admission must be detained pending removal proceedings. It did not do so. Instead, Congress said that an applicant for admission who is *seeking admission* must be detained. Respondents' interpretation "would require the Court to ignore the specific text Congress used in the statute." *Gu*, 2026 WL 621356, at *9.; *see also Lemus*, 2026 WL 496731, at *10 ("this Court will not presume that Congress intended its words to be redundant or superfluous").

In light of § 1225(b)(2)(A)'s plain language, "[t]he vast majority of courts" including "almost every district court within the Sixth Circuit" have rejected Respondents' interpretation.

18

*Lemus*, 2026 WL 496731, at *12; *see also Lopez*, 2026 WL 395202, at *10 ("this Court joins the clear majority of courts across the country that have refused to read words out of the statute, ignore superfluous language, downplay Supreme Court dicta, and disregard long-standing principles of immigration law"); *Millan*, 2026 WL 248376, at *9 ("Overwhelmingly district courts have disagreed with the agency's interpretation of Section 1225(b)(2)(A)'s mandatory detention scheme"); *Kuar*, 2026 WL 709728, at *12 ("the Court joins the overwhelming majority of courts across the country in concluding that § 1226(a) applies to Petitioner").

The structure of the relevant provisions further weighs against Respondents' interpretation. In *Jennings*, the Court described § 1226(a) as a "default rule" that permits detention of certain "alien[s] present in the country," including "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." 583 U.S. at 288. By contrast, the Court noted that § 1225(b) "applies primarily to aliens seeking entry into the United States . . . ." *Id*. at 297. While not a direct holding of the Court and not dispositive, "[t]he Supreme Court's analysis in *Jennings* thus supports [the] reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a) provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted." *Lemus*, 2026 WL 496731, at *11.

Two other considerations further buttress that conclusion. First, § 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "The use of 'arriving aliens' strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States." *Gu*, 2026 WL 621356, at *10. By contrast, § 1226 uses the broader title, "Apprehension and detention of aliens." 8 U.S.C. § 1226. "Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380

19

(2018) (citations and internal quotations omitted).

In addition, subsequent legislative history counsels against interpreting § 1225(b)(2)(A) as applying to aliens already present in the United States, regardless of whether those aliens are actively seeking admission. In 2025, Congress passed the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). The Laken Riley Act added 8 U.S.C. § 1226(c)(1)(E), which provides that the Attorney General "shall take into custody" an alien who is inadmissible under several provisions, including 8 U.S.C. § 1182(a)(6)(A), if the alien is charged with, arrested for, convicted of, or admits to, certain felonies. § 1182(a)(6)(A), in turn, provides that an alien is inadmissible if the alien is present in the United States without being admitted or paroled, or if the alien arrives in the United States at a time or place other than as designated by the Attorney General. 8 U.S.C. § 1182(a)(6)(A). If aliens who are present in the United States without being admitted or paroled are already subject to mandatory detention under § 1125(b)(2)(A), it would render that portion of § 1226(c)(1)(E) superfluous. *See Gu*, 2026 WL 621356, at \*10-11; *Lemus*, 2026 WL 496731, at \*12; *Cuyun*, 2026 WL 362791, at \*10 (noting that accepting Respondents' argument would potentially render the Laken Riley Act's amendments adding § 1226(e) "entirely unnecessary").

To support their argument, Respondents rely on the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). There, the court held, in a split decision, that "being an 'applicant for admission' is not a condition independent from 'seeking admission.'" *Id*. at 502. The court also held that, to the extent that interpretation rendered the term "seeking admission" redundant, "'redundancies are common in statutory drafting'" and do not give a court license to rewrite the statutory text. *Id*. at 503 (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

One judge dissented, concluding that the majority "disregard[ed] the ordinary tools of statutory interpretation based on speculation" about what would best honor Congress' goals in

20

passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *Id*. at 516. The dissent also criticized the majority for upending settled understandings of immigration law. The dissent stated that "[t]he Congress that passed IIRIRA would be surprised to learn it had also required the detention without bond of two million people" and that "[f]or almost thirty years there was no sign anyone thought it had done so, and nothing in the congressional record or the history of the statute's enforcement suggests that it did." *Id*. at 508. The dissent concluded that "Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be." *Id*. at 516.

I note that the Eighth Circuit recently joined the Fifth Circuit in adopting Respondents' interpretation, again in a split decision. *See Avila v. Bondi*, --- F.4th ---, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The *Avila* court "agree[d] with the Fifth Circuit that the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same." *Id*. at *3. The court also concluded that "[i]f Congress wanted to make clear that 'seeking admission' was an independent requirement in the statute, it could have easily done so." *Id*. at *3. But "[s]ince the structure of the text does not indicate that this phrase has a standalone meaning, merely using it as a synonym for something else does not make it surplusage." *Id*. at *4.

In response, the dissent faulted the majority for altering settled understandings, stating that "[a]ll three branches of government understood the IIRIRA to maintain the distinction between unadmitted noncitizens in the interior and those arriving at the border for detention purposes." *Id*. at *8. The dissent further noted that "[f]ive presidential administrations, including the first Trump administration, and most immigration judges interpreted § 1225 to apply only to those arriving at the border," stating that "[t]his conduct is something courts ought to consider." *Id*.

While *Buenrostro-Mendez and Avila* support Respondents' position, I, like other courts in

21

this district, respectfully disagree with their reasoning, which effectively writes the term "seeking admission" out of the statute. *See Gu*, 2026 WL 621356, at *12 ("as this Court sees it, the . . . *Buenrostro-Mendez* decision[] require[s] a linguistic leap the Court cannot make"); *Lemus*, 2026 WL 496731, at *13 ("Respectfully, this Court disagrees with the Fifth Circuit and other courts adopting the government's interpretation"); *Martinez Hernandez*, 2026 WL 698639, at *14 (holding that *Buenrostro-Mendez*, as non-controlling precedent, did not change court's analysis). I find the dissenting opinions in *Buenrostro-Mendez* and *Avila* more persuasive on both statutory interpretation and historical practice.

It is also worth noting that the Seventh Circuit reached a different conclusion at the preliminary injunction stage in a case challenging an alleged policy of arresting noncitizens without a warrant. *See Castañon-Nava v. United States Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (holding that the Government was not likely to succeed on argument that § 1225(b)(2)(A) mandated detention of aliens arrested within country because, among other things, government's interpretation "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction").

Finally, the parties dispute the impact of the fact that Mr. Blanco Cabrera originally entered the country as a UAC. Respondents argue that UACs are placed in removal proceedings under 8 U.S.C. § 1229(a) and are both applicants for admission and aliens "seeking admission" under § 1225(b)(2)(A). Petitioner, by contrast, argues that he was not subject to mandatory detention when he first encountered immigration officials as a UAC in 2020, and that the relevant focus should be on his most recent detention in 2025, after he had already been living in the country for years.

It is not clear to me whether the parties are engaged in any disagreement on this issue that is material to the issues before the Court, as Respondents also seem to assert that Mr. Blanco Cabrera is subject to mandatory detention simply because he is an alien present in the United States

without admission, rather than because of any factor unique to his UAC status. *See* ECF No. 18, PageID # 245 ("Here, Petitioner is an applicant for admission (*specifically, an alien present without admission*), placed into removal proceedings under 8 U.S.C. § 1229a.") (emphasis added).

To the extent Respondents are arguing that Mr. Blanco Cabrera's initial detention as a UAC somehow renders him subject to mandatory detention, I disagree. As one court confronting this same issue has stated:

> There is no dispute that Petitioner entered the United States when he was 17 years old and that, upon inspection, he was processed as a UAC and ultimately transferred to ORR custody as required under the TVPRA, 8 U.S.C. § 1232(b). In other words, when Petitioner crossed the border and was apprehended, the government aliens did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now— approximately four years after entering the country and being released by ORR—be treated as an "applicant for admission" defies logic.

*Salvador v. Bondi*, No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025); *see also Singh v. Stevens*, --- F. Supp. 3d ---, 2026 WL 456489, at *2 (N.D. Ohio Feb. 18, 2026) (holding that petitioner who originally entered country as UAC before being released and re-detained was "not an 'applicant for admission' subject to mandatory detention under § 1225(b)(2)"); *Madonado v. Olson*, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025) (holding that petitioner who originally entered as UAC before being released and re-detained was subject to § 1226(a), not § 1225(b)); *Ardon-Quiroz v. Assistant Field Director*, No. 25-cv-25290-JB, 2025 WL 3451645, at *7 (S.D. Fla. Dec. 1, 2025) (same); *Ramirez Perez v. Warden, Florida Soft Side South Detention Ctr.*, No. 2:26-cv-00108-SPC-NPM, 2026 WL 322872, at *1 (M.D. Fla. Feb. 6, 2026) (holding, in case involving UAC, that "applying § 1225(b)(2) to noncitizens years after they were apprehended at the border and released into the county does not comport with the policy justification for treating noncitizens in the country differently than those seeking entry").

In sum, I recommend that the Court join the majority of courts in this district, this circuit, and nationwide, and hold that § 1225(b)(2)(A) does not apply to aliens who are passively present

23

in the United States and are not "seeking admission." I also recommend the Court hold that Mr. Blanco Cabrera is not subject to mandatory detention under § 1225(b)(2)(A), and is, instead, subject to § 1226(a), which allows for discretionary bond.

### E. Due Process

That leaves only Mr. Blanco Cabrera's claim that his constitutional due process rights are being violated because Respondents continue to detain him without granting him a bond hearing even though he is detained under § 1226(a). Respondents have not addressed Mr. Blanco Cabrera's due process argument and have thus arguably forfeited the argument. *See Gualpa-Lumbi*, 2026 WL 452351, at *11 (holding that the government forfeited any opposition to petitioner's argument that he had a due process right to a bond hearing because the government offered no argument in opposition). Even absent forfeiture, however, Mr. Blanco Cabrera has shown that the failure to provide him with a bond hearing violates his due process rights.

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST., amend. V. "[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam)).

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court set forth three factors a court must consider in evaluating procedural due process claims: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 334-35.

24

All three factors weigh in favor of Mr. Blanco Cabrera. With respect to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The failure to grant Mr. Blanco Cabrera a bond hearing when he is subject only to discretionary detention under § 1226(a) thus infringes on a vital private interest.

With respect to the second factor "many district courts have found that an individualized bond hearing ensures that immigration judges can assess whether noncitizens pose a flight risk or a danger to the community, thereby mitigating the erroneous deprivation of noncitizens' liberty interests." *E.V.*, 2025 WL 3122837, at *12 (citing cases).

With respect to the final factor, the government certainly has an interest in enforcing immigration laws. "[T]hat does not, however, translate into an interest in detaining Petitioner[] without a bond hearing." *E.V.*, 2025 WL 3122837, at *12. Indeed, "any burdens imposed by providing due process were mandated by law" and Respondents "cannot claim complying with the law as stated is overly burdensome." *Gu*, 2026 WL 621356, at *14. Accordingly, I recommend that the Court grant Mr. Blanco Cabrera's petition for a writ of habeas corpus and order Respondents to provide him with a bond hearing within 7 days of the Court's order on this report and recommendation.[4]

## IV.     RECOMMENDATION

For all the reasons set forth above, I RECOMMEND that the Court DISMISS all Respondents from this action except for Respondent Raycraft. I further RECOMMEND that the Court GRANT Martinez Hernandez's Petition and ORDER Respondent to provide Mr. Blanco Cabrera with a bond hearing under 8. U.S.C. § 1226(a) within seven (7) days of the adoption of

---

[4] Because I conclude that Mr. Blanco Cabrera is entitled to relief on the merits based on my independent review of his petition, I need not consider whether he is a member of the *Maldonado Bautista* class or whether the *Maldonado Bautista* decision has any impact on the issues before the Court.

this Report and Recommendation. I further recommend that the Court DENY Respondents' motion to dismiss Mr. Blanco Cabrera's petition.


Dated: April 2, 2026                                              /s Jennifer Dowdell Armstrong
                                                                 Jennifer Dowdell Armstrong
                                                                 U.S. Magistrate Judge


**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and

26

recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).